**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE EXTRADITION OF ) | |
| ) | Misc. No. ___24-MC-160___ |
| NOMALANGA MOROADI SELINA ) | |
| CHOLOTA ) | |

**COMPLAINT PURSUANT TO 18 U.S.C. § 3184**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.      In this matter, I represent the United States in fulfilling its treaty obligation to the Republic of South Africa ("South Africa").

2.      There is an extradition treaty in force between the United States and South Africa: Extradition Treaty Between the Government of the United States of America and the Government of the Republic of South Africa, U.S.-S. Afr., Sept. 16, 1999, S. TREATY DOC. NO. 106-24 (2000) (referenced hereafter as the "Treaty").

3.      Pursuant to the Treaty, the Government of South Africa has submitted a formal request through diplomatic channels for the extradition of Nomalanga Moroadi Selina Cholota ("Cholota").

4.      According to the information provided by the Government of South Africa, South Africa charged Cholota, and is seeking her extradition, on four (4) counts (Counts 3, 4, 5, 6) of Fraud contrary to its common law, and five (5) counts (Counts 15, 16, 17, 18, 19) of Corruption contrary to Section 3(a)(ii) and/or (iii) and/or (iv), or in the alternative Section (4)(1)(a)(i) and/or (ii) and/or (iii), of the South African Prevention and Combating of Corrupt Activities Act 12 of 2004, in relation to Sections 1, 2, 20, 24, 25, and 26 of the South African Prevention of

Organised Crime Act 121 of 1998.[1]

5.      These offenses were committed within the jurisdiction of South Africa.  A warrant for Cholota's arrest was issued on October 7, 2021, by the Magistrate of the Peace in Bloemfontein, Free State Province, South Africa.  The Magistrate of the Peace in Bloemfontein, Free State Province, South Africa issued an amended warrant on August 11, 2023, which remains outstanding.

6.      South Africa presents the following facts as the basis for its charges and arrest warrant:

Cholota is one of eighteen co-defendants accused of engaging in fraud, corruption, and/or money laundering in connection with the procurement of and monetary kickbacks related to an illicit contract to eradicate asbestos within Free State Province in South Africa.  One of the co-defendants is the then-Premier of Free State, for whom Cholota served as a personal assistant during the relevant time period.  According to the extradition request, Cholota's duties went beyond that of a typical personal assistant and involved "personal matters" of the Premier.  As set forth in more detail below, Cholota is accused of knowingly helping to facilitate non-obligatory and unjustified payments (*i.e.*, kickbacks) from the contractor to third-party beneficiaries with which government officials were engaged on separate, unrelated business.

**Summary of the Illicit Contract**

In early 2014, the South African province of Gauteng ("Gauteng") awarded contracts to eight companies for a large-scale asbestos eradication project.  Gauteng awarded one of the

---

[1] South Africa also charged and requested Cholota's extradition on four (4) additional counts of fraud contrary to its common law and thirteen (13) counts of money laundering contrary to Section 4(a) or 4(b) of the Prevention of Organized Crime Act 121 of 1998.  The United States is not forwarding those charges to the Court for consideration.

contracts to Blackhead Consulting (PTY) LTD ("Blackhead"). The Gauteng contract with Blackhead was set to expire in or around April 2014. An audit was performed later in 2014 and/or 2015 and determined that Gauteng's contract with Blackhead was irregular.

On May 28, 2014, after the Gauteng contract had expired, a joint venture between Blackhead and Diamond Hill Trading 71 Consulting ("Diamond Hill," collectively the "joint venture" or "JV") submitted an unsolicited bid to the neighboring province of Free State to perform the same type of asbestos eradication as Blackhead had contracted in Gauteng. Records indicated that the JV was formed no earlier than the date on which the asbestos eradication proposal was submitted to Free State.

Free State had not called for proposals or otherwise announced an asbestos eradication project in Free State at the time it received the proposal from the JV. Pursuant to South African law, unsolicited contract bids received outside of a competitive process are generally impermissible but may be awarded under specified, limited circumstances. In particular, South African Treasury Regulation 16A6.6 permits government entities to "piggyback" off of a contract awarded by means of a competitive bidding process conducted by another government entity if certain conditions are met. Such conditions include: the underlying contract must be unexpired, the contract cannot be extended beyond the duration established by the initial entity, and the goods or services provided to the second entity must be identical to those provided to the first entity.

On June 26, 2014, one month after receiving the JV's unsolicited bid, Elias Magashule ("Magashule"), Premier of Free State province and member of the African National Congress political party ("ANC"), delivered a State of the Province speech in which he stated that an asbestos eradication project would take place within Free State between 2014 and 2019. At the

time of this speech, Cholota was serving as Magashule's personal assistant, and it is alleged she would have known about this announcement due to her position within the administration.

On October 1, 2014, the Free State Department of Human Settlement ("FSDHS"), which was authorized to award contracts on behalf of Free State, formally awarded a contract in the amount of 255 million South African rand (approximately $22,602,224 USD) to the JV for the purpose of asbestos eradication within Free State. FSDHS awarded the contract to the JV without a competitive bidding process and instead based its award on Blackhead's contract with Gauteng province. The contract between FSDHS and the JV was later found to be irregular.

In February 2015, the JV issued a report to FSDHS purporting to provide an assessment of the scope of the asbestos eradication project. South African prosecutors allege that the report was suspicious because it was issued too quickly for the amount of work required and contained inaccurate data regarding the location of asbestos-laden buildings, including duplicate addresses within the report, addresses for homes that did not actually exist, and addresses for homes that could not have contained asbestos.

Additionally, according to the extradition request, Ignatius Mpambani ("Mpambani") and Pheagane Edwin Sodi, Directors of Diamond Hill and Blackhead respectively, exchanged emails in March 2015, discussing the "cost of business" schedule for the JV. The schedule recorded alleged bribes to five government officials, including Premier Magashule, in the total amount of 27 million rand.

The South African Auditor General issued a report on July 31, 2015, finding that the asbestos contract between FSDHS and the JV was irregularly procured.[2]  Around the same time,

---

[2] The Auditor General's findings were corroborated by a report by the public prosecutor issued on March 20, 2020.

4

the Democratic Alliance, a political party in opposition to the ANC, filed a complaint with the Free State High Court regarding the illicit contract.  According to South African prosecutors, Cholota must have known about the Auditor General's report and the Democratic Alliance's complaint.

Through eight separate invoices, FSDHS paid a total of 230 million rand (approximately $20,386,320 USD) to the JV between December 2014 and August 2016 in furtherance of the contract.  Notably, upwards of 139 million rand (approximately $10-11 million USD) were made to the JV after the Auditor General's report concluded that the contract was unlawful.  In exchange, the Premier's Office, through Cholota, solicited payments from Mpambani to be paid to third parties designated by Magashule.  According to South Africa's investigation, Mpambani, at the direction of the Premier's Office, provided 1,371,310.98 rand (approximately $121,547.76 USD) in payments to third parties who were engaged in other business with the Premier's Office but had no apparent relation to the JV.

South African authorities later hired a private forensic firm, FTI Consulting ("FTI"), to conduct an objective forensic audit of all evidence related to the asbestos eradication contract. FTI issued a report in 2023 confirming that neither the JV nor its subcontractors ever performed any asbestos eradication work in Free State.  It also confirmed the numerous payments between FSDSH and the JV under the illicit contract, as well as the unlawful payments from Mpambani to third parties designated by Magashule.

**Cholota's Alleged Conduct in Furtherance of the Criminal Scheme**

South African prosecutors allege that Cholota assisted Magashule in securing kickback payments from Mpambani in exchange for awarding the asbestos contract.  Significantly, Cholota sought these payments from Mpambani within mere days or weeks of payments from

the FSDHS to the JV in connection with the awarded contract.  The four fraud charges for which Cholota's extradition is sought are based on four specific payments from the FSDHS to the JV in furtherance of the illicit contract; those payments were issued on March 26, 2015, June 4, 2015, August 11, 2015, and January 28, 2016, immediately before Cholota solicited payments from Mpambani in return.

The five corruption charges for which Cholota's extradition is sought are based on five separate payments from Mpambani to third parties made at Cholota's direction.  On each of these occasions, Cholota communicated directly with Mpambani to request payment to a third-party beneficiary designated by Magashule.  These third parties included two companies supplying hundreds of electronic tablets for unspecified use, a contact in Cuba seeking to purchase electronic tablets for apparent educational purposes, one of Magashule's childhood acquaintances who requested assistance in paying her daughter's college tuition fees, and a travel agency that booked travel accommodations for an ANC delegation's trip to Cuba.  A description of the relevant financial transactions, and Cholota's corresponding conduct, are described below.

A.  <u>Transaction Related to March 26, 2015, Contract Payment</u>

The forensic audit demonstrated that FSDHS provided payment in the amount of 25 million rand to the JV in furtherance of the illicit contract on March 26, 2015.  On May 6, 2015, Cholota emailed Mpambani requesting payment of 30,000 rand to "the SRC President in Cuba" and provided the bank account information for S.W.C. Nkate.  On May 9, 2015, Mpambani, using his personal bank account, paid 30,000 rand with a transaction reference listing the payment as a "Cuban School Donation."

B.  Transaction Related to June 4, 2015, Contract Payment

In the same May 6, 2015, email to Mpambani, Cholota attached an invoice in the amount of 470,000 rand directed to the Office of the Premier from a company called M-Tag, seeking payment for 200 "M-Tag I700" tablet devices.[3]  M-Tag purportedly provided curriculum aligned educational content in the form of videos, worksheets, and self-assessments.  On June 4, 2015, FSDHS paid the JV 15 million rand in furtherance of the illicit contract.  The very next day, on June 5, 2015, Cholota emailed Mpambani requesting payment on the 470,000 rand M-Tag invoice.  Blackhead paid 500,000 rand on June 11, 2015, towards a "Cuba trip."

C.  Transactions Related to August 11, 2015, Contract Payment

Magashule was a former classmate of former Free State Acting Judge Refiloe Mokoena ("Mokoena").  Beginning in July 2014 and continuing until at least August 2015, Mokoena exchanged emails with Magashule's office seeking payment of her daughter's tuition fees.  During the relevant time, Mokoena's daughter was a student at the University of the Free State and was offered a fifty-percent scholarship to study in the United States at Lycoming College in Pennsylvania.  Mokoena met with Magashule in Germany on July 12, 2015, while serving as part of a delegation accompanying the Premier.  During that meeting, Magashule told Mokoena that the Office of the Premier was able to financially assist deserving students and invited her to make a request of his office.

Mokoena sent an email on July 17, 2015, to an account to which both Magashule and Cholota had access, forwarding on documents "for purposes of settling my daughter's university account."  Thereafter, on July 27, 2015, Cholota sent an email to the Deputy Director of Protocol

---

[3] M-Tag was registered on December 7, 2016, only after an invoice was sent to the Office of the Premier.

Services within the Department of the Premier, stating that Magashule and Mokoena had reached an agreement to pay Mokoena's daughter's tuition and requesting that such payment be dispersed by July 31, 2015. Cholota then reached out to several entities soliciting reimbursement for Mokoena's daughter's school fees.[4]

On August 11, 2015, the FSDHS paid the JV 36.5 million rand in furtherance of the illicit contract. The following day, on August 12, 2015, Cholota forwarded to Mpambani Mokoena's July 17, 2015, email regarding her daughter's school fees. On or about August 15, 2015, Cholota assisted Magashule in facilitating the transfer of 53,550 rand (approximately $4,183), from Mpambani to Mokoena. Mpambani provided payment through a Diamond Hill account, and he provided proof of payment to Cholota on August 17, 2015. Cholota confirmed proof of the payment to Magashule on August 18, 2015, and forwarded the proof of payment to Mokoena the same day. In an interview with auditors, Mokoena confirmed that she did not know Mpambani and had been unaware of the source of the payment for her daughter's tuition.

In separate transactions only a few weeks after FSDHS's payment of 36.5 million rand, Mpambani, through a subcontractor and Diamond Hill respectively, paid a total of 300,000 rand to a company called Griffin Edge (Pty) Ltd ("Griffin Edge") at Cholota's direction on August 31, 2015, and September 1, 2015. The payments to Griffin Edge were purportedly for the purchase of 200 electronic tablets. For the August 31, 2015, transaction, Mpambani sent money from the account of the entity 605 Consulting, for which he was the only authorized signatory, with the transaction description of "OFFICE TABLETS" and "2015/8/A14-000016." For the September 1, 2015, transaction, Mpambani sent money from the Diamond Hill account to Griffin Edge, with

---

[4] One company that Cholota solicited on August 8, 2015, paid part of the school fees on August 14, 2015, and April 12, 2016.

the transaction description of "Vodacom Tablets 2015/8/A14/000016."  Mpambani then emailed

confirmation of the 100,000 rand payment on September 1, 2015, to the Office of the Premier,

and Cholota confirmed that the proof of payment was received.  As part of its audit, FTI was

unable to find any legitimate reason why Mpambani made these payments to Griffin Edge or

why these payments to Griffin Edge were processed through Magashule's office.

     D.   Transaction Related to January 28, 2016, Contract Payment

Beginning in August 2015, Cholota exchanged emails regarding upcoming meetings to

determine who would be part of a government delegation on a trip to Cuba.  It was later

determined that the delegation would be comprised of members of the ANC, and Cholota

coordinated with a travel agency, Astra Travel ("Astra") to book the accommodations for the

delegation. Cholota also exchanged emails with Astra to determine how payment would be made

in connection with this trip.  On November 12, 2015, the ANC paid 500,000 rand in connection

with these travel arrangements, and the ANC provided proof of payment to Astra and Cholota.

On November 16, 2015, Astra forwarded the invoices to Magashule's office, and Astra

forwarded the same invoices to Cholota directly the following day.  Astra followed-up with

Cholota on December 1, 2015, proposing an amount of the final balance.  Cholota responded the

same day acknowledging receipt of the invoices, confirming that Astra could proceed with

payment of its vendors, and stating that she would talk to Magashule about payment of the

remaining balance.  The following day, on December 2, 2015, Astra forwarded the final invoice

reflecting a balance of 485,000 rand to Cholota and another individual in Magashule's office and

requested that payment be provided by December 7, 2015.

On January 28, 2016, the FSDHS processed a payment to Blackhead for 10 million rand

in connection with the asbestos contract.  That same day, Cholota emailed Astra's banking

details to Mpambani requesting 250,000 rand "as discussed telephonically," and asking him to send proof of payment directly to her email address.  The next day, on January 29, 2016, Astra sent a proposed invoice to Cholota in the amount of 250,000 rand and asked if the invoice was "OK."  Cholota responded that "it's perfect."  Cholota then immediately forwarded the invoice to Mpambani, and Mpambani confirmed receipt.  Mpambani sent a payment of 250,000 rand from an account belonging to 605 Consulting to Astra on January 30, 2016, with the transaction references listed as "TRAVEL-CUBA 2015" and "CUBA DELEGATION."  Two days later, Cholota confirmed the payment was received.

Then, on March 18, 2016, Cholota emailed the former branch manager of the ANC, with an attached Astra invoice, stating that Magashule had requested that ANC pay the remaining balance because she had been unable to find a sponsor to cover the balance.

**Additional Evidence of Cholota's Knowledge of and Participation in the Criminal Scheme**

The extradition request contains numerous other pieces of evidence that support the South African authorities' allegations that Cholota knew about, and participated in, the illicit contract and kickback scheme.

*First*, the request reflects that shortly after the FSDHS's payment to the JV on March 26, 2015, Mpambani paid 237,710.98 rand towards tuition fees of students listed in a spreadsheet that had been forwarded from the receptionist in the Free State Department of the Premier to Cholota on April 10, 2015.  The spreadsheet contained a list of nine students, listed by student number, and the amounts of their outstanding tuition fees.  On April 11, 2015, Mpambani made eight separate transactions to three separate universities in amounts that exactly matched the tuition fees owed by eight of the students listed in the spreadsheet.  Notably, the reference line for each transaction contained the corresponding student number for the exact amount owed.

*Second*, Cholota personally sent emails confirming Mpambani's attendance at several high-profile events put on by Magashule's office.  For one event in July 2016, Cholota's email confirms that Mpambani was seated at Magashule's table at an event, signaling that Mpambani was "far more important than the average businessman."  Additionally, Mpambani was invited to the State of the Province address given by Magashule in 2017.  The request also references two additional events that Mpambani attended in November and December 2015, respectively.

*Third*, Cholota possessed two bank accounts, one for her personal transactions, including her receipt of her paychecks for her employment at the Premier's Office, and another account that was undisclosed to authorities and received unknown cash deposits as well as transfers from service providers, individuals related to service providers, ANC members, individuals with a close relationship with Magashule, and other government officials mainly within the Office of the Premier.

*Fourth,* Cholota's cousin, as well as Magashule's son, were two of only a handful of beneficiaries of scholarships awarded in January 2018, by the Free State Provincial Government to students seeking to study at Bay Atlantic University ("BAU") in Washington, D.C.

*Fifth*, Cholota was later awarded a grant from the Free State Provincial Government to study in the United States at BAU.  According to South African authorities, Cholota failed to meet several of the designated criteria to be eligible for educational funds through Free State.  Notably, Magashule served on the Board of Trustees for BAU when Cholota was accepted to the school in July 2019.  The record further reflects that Cholota was personally invited by the university to tour the campus.

### Summary of South Africa's Investigation of Cholota

The extradition request contains an affidavit from an investigator from the Judicial Commission of Inquiry Allegations of State Capture, indicating that her unit was asked to investigate the asbestos contract in Free State, specifically the allegation that Magashule's office had requested vendors to pay certain expenses requested by the Premier.  The affidavit indicates that a whistleblower had provided relevant emails between Cholota and Mpambani, which then led to the investigator seeking interviews with Cholota in connection with the investigation.

The investigator met with Cholota on June 18, 2019.  According to the investigator, Cholota was generally cooperative during that meeting and had given consent to search her electronic devices.  The investigator attempted to conduct a follow-up interview with Cholota by phone on July 17, 2019.  The investigator stated that, "Cholota's attitude started to change, and she was no longer as cooperative as during the first interview."  Notably, this appears to coincide with when she was accepted into the BAU program.  Regarding an additional interview on August 5, 2019, the investigator stated that Cholota was again reluctant to cooperate.  Cholota eventually testified before the Judicial Commission on December 6, 2019.

In connection with a mutual legal assistance request South Africa sent to the United States pursuant to the countries' bilateral treaty, Cholota was interviewed in Baltimore, Maryland, on September 22-23, 2021.  During the first interview on September 22, 2021, Cholota was asked questions about the Premier Office's payments of student fees, electronic tablets, and travel expenses, but she refused to provide answers.  She specifically stated that she was uncomfortable answering questions about who ordered her to seek payments on behalf of the Premier's Office.  She eventually said that the requests were made by the "office of the Premier," but she declined to identify any particular individual.  At the second part of her interview on

September 23, 2021, Cholota was informed that she was no longer considered a prosecution witness but instead was considered a suspect who had a right to remain silent and obtain counsel. Cholota requested a legal representative and confirmed that she was willing to provide a written statement, through counsel, in response to the prosecutors' questions by October 23, 2021.[5]

In connection with the ongoing criminal proceedings against Cholota and her co-defendants in South Africa, Cholota's South African counsel told the court on January 20, 2023, that she was prepared to travel to South Africa and surrender herself.  Cholota has yet to do so.[6]

7.      Cholota is likely to be found within the jurisdiction of this Court.  According to information obtained from U.S. law enforcement, she has an active Maryland driver's license, renewed on February 12, 2024, listing her current address in Baltimore, Maryland.

8.      Michael Gilles, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and attaching copy of the Treaty.  The declaration states that the offenses for which extradition is sought are provided for by the Treaty and confirms that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in South Africa, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9.      The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from South Africa, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit

---

[5] The extradition request does not reflect whether such statement was ever provided.

[6] On January 26, 2023, Cholota was arrested in connection with immigration removal proceedings initiated by the U.S. Department of Homeland Security.  She was released on bond on February 2, 2023, and removal proceedings were terminated.

#1) are filed with this complaint and incorporated by reference herein.

10.     Cholota would be likely to flee if she learned of the existence of a warrant for her

arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed

person be issued in accordance with 18 U.S.C. § 3184 and the Treaty so that she may be arrested

and brought before this Court so that the evidence of criminality may be heard and considered.

The undersigned further requests that this complaint and the warrant be placed under the seal of

the Court until such time as the warrant is executed.

JASON
MEDINGER

Digitally signed by
JASON MEDINGER
Date: 2024.04.10
20:26:43 -04'00'

_____

Jason D. Medinger
Assistant United States Attorney


Sworn to before me and subscribed in my presence this _12th_ day of April, 2024, at
_____2:25 p.m._____ .

_____

The Honorable Charles D. Austin
United States Magistrate Judge