DECLARATION OF MICHAEL GILLES

I, Michael Gilles, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of Nomalanga Moroadi Selina Cholota. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and South Africa which apply to this case are found in the Extradition Treaty between the Government of the United States of America and the Government of the Republic of South Africa of September 16, 1999, which entered into force on June 25, 2001 (the "Treaty"). A copy of the Treaty is attached to this declaration.

3. Pursuant to the provisions of the Treaty, the Department of International Relations and Cooperation of the Republic of South Africa ("DIRCO") submitted Diplomatic Note CONS/0130/2022, dated March 25, 2022, formally requesting the extradition of Nomalanga Moroadi Selina Cholota. DIRCO later submitted Diplomatic Note CONS/0560/2023, dated November 30, 2023, providing additional documents in support of South Africa's extradition request. Copies of the diplomatic notes are attached to this declaration.

4. In accordance with Article 21 of the Treaty, the Government of the United States of America provides legal representation in United States courts for South Africa in its extradition requests, and South Africa provides legal representation in its courts for extradition requests made by the United States.

5. The offenses of fraud, in violation of Section 34 of the South African Prevention of Corrupt Activities Act, Act 12 of 2004, ("Act 12 of 2004") as charged in Counts 3, 4, 5, and 6 of South Africa's charging document; corruption, in violation of Section 3 of Act 12 of 2004, as charged in Counts 15 through 19; and the specified alternative charges to those counts, corruption in violation of Section 4 of Act 12 of 2004, for which extradition is sought, are covered by Article 2 of the Treaty. The remaining offenses for which extradition was sought are not referred to the court for consideration.

6. The original documents submitted by the Government of South Africa in support of its extradition request were certified on March 30, 2022, by John Gimbel, Country Consular Coordinator of the United States in Johannesburg, in accordance with Title 18, United States Code, Section 3190. Mr. Gimbel, at the time of his certification, was the principal consular officer of the United States in South Africa. Later, the Government of South Africa submitted supplemental documents in support of its extradition request, which were certified on November 13, 2023, by Rafael Antonio Perez, Country Consular Coordinator of the United States in Johannesburg, in accordance with Title 18, United States Code, Section 3190. Mr. Perez, at the time of his certification, was the principal consular officer of the United States in South Africa.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April __8__, 2024, in Washington, D.C.

MICHAEL GILLES

Attachments:
1. Copy of Diplomatic Note of March 25, 2022
2. Copy of Diplomatic Note of November 30, 2023
3. Copy of Treaty

CONS/0130/2022

The Department of International Relations and Cooperation of the Republic of South Africa presents its compliments to the Embassy of the United States of America and has the hounour to inform the Embassy regarding the request for Extradition from the   Department of Justice and Constitutional Development regarding the Extradition of Nomalanga Moroadi Selina Cholota to be forwarded to the relevant authorities.

The Department of International Relations and Cooperation of the Republic of South Africa avails itself of this opportunity of this opportunity to renew to the Embassy of the United States the assurance the assurance of its highest consideration.

PRETORIA
25 March 2022

The Embassy of the United States of America
PRETORIA



EXT CHOLOTA 0003



**CONS/0560/2023**

The Department of International Relation and Cooperation of the Republic of South Africa presents its compliments to the Embassy of the United States of America and has the honour to forward the attached request for extradition, of **NOMALANGA MOROADI SELINA CHOLATA**, received from the Department of Justice and Constitutional Development.

The Department of International Relation and Cooperation of the Republic of South Africa avails itself of the opportunity to renew to the Embassy of the Republic of the United States the assurance of its highest consideration

PRETORIA
30 November 2023

The Embassy of the United States of America
PRETORIA

# EXTRADITION

**Treaty Between the**

**UNITED STATES OF AMERICA**

**and SOUTH AFRICA**

Signed at Washington September 16, 1999



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# SOUTH AFRICA

## Extradition

*Treaty signed at Washington September 16, 1999;*
*Transmitted by the President of the United States of America*
     *to the Senate May 18, 2000 (Treaty Doc. 106-24,*
     *106th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
     *September 27, 2000 (Senate Executive Report No. 106-26,*
     *106th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
     *October 18, 2000;*
*Ratified by the President December 23, 2000;*
*Ratified by South Africa March 28, 2001;*
*Ratifications exchanged at Pretoria June 25, 2001;*
*Entered into force June 25, 2001.*

**EXTRADITION TREATY**
**BETWEEN**
**THE GOVERNMENT OF THE UNITED STATES OF AMERICA**
**AND**
**THE GOVERNMENT OF THE REPUBLIC OF SOUTH AFRICA**

TABLE OF CONTENTS

| | |
|---|---|
| **Article 1** | **Obligation to Extradite** |
| **Article 2** | **Extraditable Offences** |
| **Article 3** | **Nationality** |
| **Article 4** | **Political and Military Offences** |
| **Article 5** | **Capital Punishment** |
| **Article 6** | **Non Bis in Idem** |
| **Article 7** | **Temporary and Deferred Surrender** |
| **Article 8** | **Lapse of Time** |
| **Article 9** | **Extradition Procedures and Required Documents** |
| **Article 10** | **Admissibility of Documents** |
| **Article 11** | **Translation** |
| **Article 12** | **Additional Information** |
| **Article 13** | **Provisional Arrest** |
| **Article 14** | **Decision and Surrender** |
| **Article 15** | **Concurrent Requests** |
| **Article 16** | **Seizure and Surrender of Property** |
| **Article 17** | **Rule of Specialty** |
| **Article 18** | **Surrender to a Third State or an International Tribunal** |
| **Article 19** | **Waiver** |
| **Article 20** | **Transit** |
| **Article 21** | **Representation and Expenses** |
| **Article 22** | **Consultation** |
| **Article 23** | **Application** |
| **Article 24** | **Ratification, Entry into Force, and  Termination** |
| **Annex** | |

The Government of the United States of America and the Government of the Republic of South Africa;

Recalling the Treaty Relating to the Reciprocal Extradition of Criminals, signed at Washington December 18, 1947,

Noting that both the Government of the United States of America and the Government of the Republic of South Africa currently apply the terms of that Treaty, and

Desiring to provide for more effective cooperation between the two States in the fight against crime, and, for that purpose, to conclude a new treaty for the extradition of offenders;

Hereby agree as follows:

- 2 -

## Article 1
### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offence.

## Article 2
### Extraditable Offences

1. An offence shall be an extraditable offence if it is punishable under the laws in both States by deprivation of liberty for a period of at least one year or by a more severe penalty.

2. An offence shall also be an extraditable offence if it consists of attempting or conspiring to commit, or aiding, abetting, inducing, counseling or procuring the commission of, or being an accessory before or after the fact to, any offence described in sub-article 1.

3. For the purposes of this Article, an offence shall be an extraditable offence whether or not the:
   (a) laws in the Requesting and Requested States place the offence within the same category of offences or describe the offence by the same terminology; or
   (b) offence is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States Federal court.

4. If an offence has been committed outside the territory of the Requesting State, extradition shall be granted where the laws in the Requested State provide for the punishment of an offence committed outside its territory in similar circumstances. Where

- 3 -

the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition.

5.      Extradition shall also be granted in respect of a person convicted of but not yet sentenced, or convicted of and sentenced for an offence as contemplated in this Article, for the purpose of sentence, or for enforcing such sentence or the remaining portion thereof, as the case may be.

6.      Where extradition of a person is sought for an offence against a law relating to taxation, customs duties, exchange control, or other revenue matters, extradition may not be refused on the ground that the law of the Requested State does not impose the same kind of tax or duty or does not contain a tax, customs duty, or exchange regulation of the same kind as the law of the Requesting State.

7.      If the request for extradition relates to more than one offence and extradition is granted for an extraditable offence, it shall also be granted for any other offence specified in the request even if the latter offence is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

### Article 3
### Nationality

Extradition shall not be refused on the ground of the nationality of the person sought.

### Article 4
### Political and Military Offences

1.      Extradition shall not be granted if the offence for which extradition is requested is a political offence.

- 4 -

2.    For the purposes of this Treaty, the following offences shall not be considered political offences:

      (a)    a murder or other violent crime against a Head of State or Deputy Head of State of the Requesting or Requested State, or of or against a member of such person's family;

      (b)    an offence for which both the Requesting and Requested States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their respective competent authorities for decision as to prosecution;

      (c)    murder;

      (d)    an offence involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage; and

      (e)    attempting or conspiring to commit, aiding, abetting, inducing, counseling or procuring the commission of, or being an accessory before or after the fact to such offences.

3.    Notwithstanding the terms of sub-article 2, extradition shall not be granted if the executive authority of the Requested State determines that there are substantial grounds for believing that the request has been made for the purpose of prosecuting or punishing a person on account of that person's gender, race, religion, nationality, or political opinion.

4.    The executive authority of the Requested State shall refuse extradition for offences under military law that are not offences under ordinary criminal law.

## Article 5
## Capital Punishment

1.    When the offence for which extradition is sought is punishable by death under the laws in the Requesting State, and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless the Requesting State provides assurances that the death penalty will not be imposed, or if imposed, will not be carried out.

- 5 -

2.       In instances in which a Requesting State provides an assurance in accordance with this Article, the death penalty, if imposed by the courts of the Requesting State, shall not be carried out.

### Article 6
### Non Bis in Idem

1.       Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State of the offence for which extradition is requested.

2.       Extradition shall not be precluded by the fact that the competent authorities of the Requested State have decided either:

(a)     not to prosecute the person sought for the acts or omissions for which extradition is requested;

(b)     to discontinue any criminal proceedings which have been instituted against the person sought for those acts or omissions,  provided that such discontinuance does not have the effect of acquittal: or

(c)     to investigate the person sought for the same acts or omissions.

### Article 7
### Temporary and Deferred Surrender

1.       The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State until such prosecution has been concluded or any such sentence has been served.

2.       If the extradition request is granted in the case of a person who is being prosecuted or is serving a sentence in the Requested State, that State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that

- 6 -

person, in accordance with conditions to be determined by mutual agreement between the Requesting and Requested States.

## Article 8
## Lapse of Time

Extradition shall not be granted when the prosecution has become barred by lapse of time according to the laws in the Requesting State.

## Article 9
## Extradition Procedures and Required Documents

1.      All requests for extradition shall be made in writing and shall be submitted through the diplomatic channel.

2.      All requests shall be supported by:

    (a)      information describing the facts of the offence(s) and the procedural history of the case;

    (b)      a statement or text of the law, if any, creating or relating to the offence(s) for which the extradition is requested;

    (c)      a statement or text of the relevant law prescribing maximum punishment for the offence(s);

    (d)      a statement or text of the law relating to lapse of time which shall be conclusive;

    (e)      as accurate a description as possible of the person sought together with any other information which may help to establish that person's identity or nationality and probable location; and

    (f)      the documents, statements, or other information specified in sub-article 3 or 4, as the case may be.

- 7 -

3.     In addition to the information, statements or documents referred to in sub-article 2, a request for extradition of a person who is sought for prosecution shall also be supported by:

    (a)    a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

    (b)    a copy of the indictment, charge sheet, or other charging document; and

    (c)    such information as would justify committal for extradition under the laws of the Requested State, but neither State is required to establish a prima facie case.

4.     In addition to the information, statements or documents referred to in sub-article 2, a request relating to a person who has been convicted of the offence for which extradition is sought shall also be supported by:

    (a)    a copy of the judgment of conviction, or, if a copy is not available, a statement by a judicial officer or other competent authority that the person has been convicted or a copy of any record of conviction that reflects the charge and the conviction;

    (b)    information establishing that the person sought is the person to whom the finding of guilt refers;

    (c)    a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

    (d)    in the case of a person who has been convicted in absentia, the documents required by sub-article 3.

### Article 10
### Admissibility of Documents

Any document referred to in Article 9 shall be received in evidence in any proceedings for extradition if:

- 8 -

1.  In the case of a request from the United States, such document is:

    (a)  accompanied by a certificate according to the example set out in the Annex to this Treaty; or

    (b)  authenticated by the signature and seal of office of:

        (i)  the head of a South African diplomatic or consular mission or a person in the administrative or professional division of the public service serving at a South African diplomatic, consular, or trade office in the United States of America or a South African foreign service officer grade VII or an honorary South African consul general, vice-consul or trade commissioner; or

        (ii)  any government authority of the United States of America charged with the authentication of documents in terms of its domestic law; or

        (iii)  any notary public or other  person in the United States of America who shall be shown by a certificate of any person referred to in subparagraphs (i) or (ii) or of any diplomatic or consular officer of the United States of America in the Republic of South Africa to be duly authorized to authenticate such document in terms of the domestic law of the United States of America

2.  In the case of a request from the Republic of South Africa, such document is certified by the principal diplomatic or principal consular officer of the United States resident in the Republic of South Africa, as provided by the extradition laws of the United States; or

3.  Such document is certified or authenticated in any other manner acceptable by the laws in the Requested State.

### Article 11
### Translation

Any document produced in relation to extradition proceedings in terms of this Treaty which is not in English shall be accompanied by a translation in English.

### Article 12
### Additional Information

1.      If the executive authority of the Requested State considers that the information furnished in support of the request for extradition is not sufficient to enable the request for extradition to be granted, it shall notify the Requesting State in order to enable that State to furnish additional information.

2.      The executive authority may fix a reasonable time limit for such information to be furnished.

3.      Nothing shall prevent the executive authority of the Requested State from presenting to a court of that State information sought or obtained after submission of the request to the Court or after expiration of the time stipulated pursuant to sub-article 2.

### Article 13
### Provisional Arrest

1.      In case of urgency, the Requesting State may, for the purpose of extradition, request the provisional arrest of the person sought pending presentation of the documents in support of the extradition request.  A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Republic of South Africa Department of Justice.  The facilities of the International Criminal Police Organization (INTERPOL) also may be used to transmit such a request. The application may also be transmitted by post, telegraph, telefax, or any other means affording a record in writing.

- 10 -

2.   The application for provisional arrest shall contain:

(a)   a description of the person sought;

(b)   the location of the person sought, if known;

(c)   a description of the offence(s);

(d)   a concise statement of the acts or omissions alleged to constitute the offence(s);

(e)   a description of the punishment that can be imposed or has been imposed for the offence(s);

(f)   a statement that a document referred to in Article 9(3)(a) or Article 9(4)(a), as the case may be, exists; and

(g)   a statement that the documents supporting the extradition request for the person sought will follow within the time specified in this Treaty.

3.   Prompt attention shall be given to such application and the Requesting State shall be notified as soon as possible of the decision regarding its application for provisional arrest and, if applicable, the reasons for any inability to proceed with the application.

4.   A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the documents required in Article 9.  For this purpose, receipt of said documents by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5.   The release from custody of a person pursuant to sub-article 4 shall not prejudice the subsequent re-arrest and extradition of that person if the documents required in Article 9 are delivered at a later date.

- 11 -

## Article 14
### Decision and Surrender

1.      The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2.      Reasons shall be given by the Requested State for any complete or partial refusal of a request for extradition.  The Requested State shall provide copies of pertinent judicial decisions upon request.

3.      If the request for extradition is granted, the relevant authorities of the Requesting and Requested States shall agree on the date and place for the surrender of the person sought.

4.      If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offence.

5.      If circumstances beyond its control prevent either the Requesting State or the Requested State from respectively surrendering or receiving the person sought, the State so prevented shall notify the other accordingly and seek to agree on a new date for such surrender.

## Article 15
### Concurrent Requests

1.      Where requests are received from two or more States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the Requested State shall determine to which of those States, if any, the person is to be extradited and shall notify the Requesting State of its decision.

- 12 -

2.    In determining to which State the person is to be extradited, the Requested State shall consider all relevant factors, including but not limited to:

        (a)    whether the requests were made pursuant to an extradition treaty;

        (b)    the relative seriousness of the offences, should those requests relate to different offences;

        (c)    the time and place of commission of each offence;

        (d)    the respective dates on which the requests were received from the respective States;

        (e)    the interests of the respective States;

        (f)    the nationality of the victim; and

        (g)    the possibility of any subsequent extradition between the respective States.

### Article 16
### Seizure and Surrender of Property

1.    To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all property, including articles and documents, that may be found in the Requested State and that has been acquired as a result of the offence or is connected thereto or may be required as evidence, if extradition is granted.

2.    The property referred to in sub-article 1 may be surrendered to the Requesting State, if the latter so requests, even if the extradition cannot be carried out due to the death, disappearance, or escape of the person sought.

3.    Where the said property is liable to seizure or confiscation within the jurisdiction of the Requested State, the latter may, upon satisfactory assurances from the Requesting State that the property will be returned within a fixed period of time or as soon as practicable, temporarily surrender that property to the Requesting State. The Requested State may also defer the surrender of such property if it is required in connection with pending criminal proceedings in the jurisdiction of the Requested State.

- 13 -

4.      Any rights which the Requested State or third parties may have to such property shall be duly respected in accordance with the law in the Requested State.

### Article 17
### Rule of Specialty

1.      A person extradited under this Treaty shall not be detained, tried, or punished in the Requesting State for any offence committed before his or her extradition other than an offence:

(a)     for which extradition was granted or any other extraditable offence of which the person could be convicted upon proof of the facts upon which the request for extradition was granted, or is a lesser included offence;

(b)     for which the executive authority of the Requested State consents to the person's detention, trial, or punishment.  For the purpose of this paragraph:

(i)     the Requested State may require the submission of the documentation referred to in Article 9; and

(ii)    the person extradited may be detained by the Requesting State for sixty (60) days, or for such longer period of time as the Requested State may authorize, pending the processing of the request.

2.      Sub-article 1 of this Article shall not apply if:

(a)     the person extradited leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b)     the person extradited has had an opportunity to leave the territory of the Requesting  State and has not done so within fifteen (15) days of final discharge in respect of the offence for which that person was extradited.

- 14 -

### Article 18
#### Surrender to a Third State or an International Tribunal

1.      Where a person has been surrendered to the Requesting State by the Requested State, the Requesting State shall not surrender that person to any third State or an international tribunal for an offence committed before that person's surrender unless:

    (a)      the Requested State consents to that surrender; or

    (b)      the person has had an opportunity to leave the territory of the Requesting State and has not done so within fifteen (15) days of final discharge in respect of the offence for which that person was surrendered by the Requested State or has returned to the territory of the Requesting State after leaving it.

2.      Before acceding to a request pursuant to sub-article 1, the Requested State may request relevant information.

### Article 19
#### Waiver

If the person sought consents to be surrendered to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

### Article 20
#### Transit

1.      Either State may authorize transportation through its territory of a person surrendered to the other State by a third State.

2.      A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Department of Justice of

- 15 -

the Republic of South Africa. In cases of urgency, the facilities of the International
Criminal Police Organization (INTERPOL) may also be used to transmit such a request.

3.     The request for transit shall contain:

    (a)     a description of the person together with any information that may
        help to establish his or her identity and nationality; and

    (b)     a brief statement of the facts of the case, and a list of the offences for
        which the person was surrendered by the third State.

4.     Permission for the transit of a person shall, subject to the law of the
Requested State, include permission for the person to be held in custody during transit. If
transportation is not continued within a reasonable time, the executive authority of the State
in whose territory the person is being held may direct that the person be released.

5.     Authorization is not required when air transportation is used by one State
and no landing is scheduled on the territory of the other State. If an unscheduled landing
does occur, the State in whose territory such landing occurs may require a request for
transit pursuant to sub-article 2, and it may detain the person until the request for transit is
received and the transit is effected, provided that such request is received within 96 hours of
the unscheduled landing.

## Article 21

### Representation and Expenses

1.     The Requested State shall make all necessary arrangements for and meet the
cost of any proceedings arising out of a request for extradition and shall advise, assist,
appear in court on behalf of, and otherwise represent the interests of the Requesting State.

2.     The Requested State shall bear the expenses incurred in its territory or
jurisdiction in the arrest and detention of the person whose extradition is sought until that
person is surrendered to a person nominated by the Requesting State.

- 16 -

3.     The Requesting State shall pay all the expenses incurred in the translation of extradition documents and in conveying the person from the territory of the Requested State.

4.     Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

## Article 22
## Consultation

The United States Department of Justice and the Department of Justice of the Republic of South Africa or persons designated by the respective Departments of Justice may consult with each other directly or through the facilities of the International Criminal Police Organization (INTERPOL) in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

## Article 23
## Application

This Treaty shall apply to any offence contemplated in Article 2, whether committed before, on, or after the date upon which this Treaty enters into force.   Nothing in this treaty shall be deemed to require or authorize any action by the Requested State that is contrary to the constitution of that State.

## Article 24
## Ratification, Entry into Force, and Termination

1.     This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged as soon as possible.

- 17 -

2.      This Treaty shall enter into force upon the exchange of the instruments of ratification.

3.      Upon the entry into force of this Treaty, the Treaty Relating to the Reciprocal Extradition of Criminals, signed at Washington December 18, 1947, shall cease to have any effect.  Nevertheless, the prior Treaty shall apply to any extradition proceedings in which the extradition documents have already been submitted to the courts of the Requested State at the time this Treaty enters into force, except that Article 19 of this Treaty shall be applicable to such proceedings.  Articles 17 and 18 of this Treaty shall apply to persons found extraditable under the prior Treaty.

4.      Either State may terminate this Treaty at any time by giving written notice to the other State, and the termination shall be effective six months after the date of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE at Washington in duplicate, this sixteenth day of  September, 1999.

FOR THE GOVERNMENT OF THE             FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:             THE REPUBLIC OF SOUTH AFRICA:

ANNEX

## APPOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

1.  Country ...........................................................................................

   This public document

2.  has been signed by ........................................................................

3.  acting in the capacity of ................................................................

4.  bears the seal/stamp of ..................................................................


**Certified**

5.  at ....................................................................................................

6.  the (date) .......................................................................................

7.  by ...................................................................................................

8.  No. ................................................................................................

9.  Seal/stamp:                                    10. Signature:

   ..........................................            ..........................................

   ..........................................            ..........................................

   ..........................................            ..........................................